Filing # 58777689 E-Filed 07/10/2017 12:48:14 PM

IN THE CIRCUIT COURT OF THE 6TH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

**MICHAEL KING**             Case No.

    **Plaintiff,**

vs.

**THE SALATION ARMY,**

    **Defendant.**

_____/

### COMPLAINT

Plaintiff, MICHAEL KING ("Plaintiff" or "King") brings this civil action for monetary and injunctive relief under Florida's Whistleblower Statutes, Chapter 448, Florida Statutes because of retaliation by The Salvation Army ("Defendant"), and says:

### JURISDICTION

1. This Court has jurisdiction because Plaintiff seeks relief in an amount greater than $15,000, exclusive of interest, costs, and attorney fees.

2. This action is brought pursuant to Florida's Whistleblower Statue and the Defendant is subject to the jurisdiction of this Court.

3. Venue is proper in this Court because Defendant's retaliatory personnel action against Plaintiff took place in Pasco County; Plaintiff resides in Pasco County, Florida; Defendant is a foreign corporation and has its Florida registered office in Pasco County.

1

## PARTIES

4. At all times material hereto, the Plaintiff was an "Employee" of Defendant as defined by § 448.101(2), Fla. Stat.

5. At all times material hereto, the Defendant was an "Employer" of Plaintiff as defined by § 448.101(3), Fla. Stat.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6. Plaintiff began working for Defendant on or about January 2014 at one of Defendant's retail stores located in St. Petersburg, Florida as a part-time "donation attendant". Defendant would work in on the dock and warehouse – an outdoor position.

7. Although numerous other "donation attendants" were terminated, Plaintiff remained employed with Defendant because of his excellent work performance.

8. A few months later, Plaintiff was promoted to "Clothes Sorter" – an indoor position.

9. Plaintiff was then relocated to Defendant's store at 2225 U.S. Hwy 19, Holiday, Florida ("Holiday Store") and promoted to "Furniture Associate" position" – a full-time position.

10. The Holiday Store is a large retail family super-store that has a large inventory of "high-ticket" items such as furniture, mattresses, televisions, lawn mowers, etc. The store also sells basic household goods and clothing.

11. Plaintiff was then promoted again and transferred to another store on or about February 2016 to become an Assistant Manager.

2

12. Plaintiff was brought back in February 2017 to the Holiday Store and promoted to Furniture Manager, or "Third-Key Holder". At a Salvation Army retail store, the Third-Key manager is third-in-charge after the Manager and Assistant Manager(s).

13. Due to his excellent work performance, Plaintiff has been promoted several times and his work responsibilities have increased accordingly.

14. Plaintiff has always received work performance reviews that "exceeds expectations".

15. At the Holiday Store, the Manager is "Morris" and the Assistant Manager is "Tina". Both Morris and Tina are "Supervisors" as defined by § 448.101(6), Fla. Stat.

16. Upon his relocation to the Holiday Store, Plaintiff immediately recognized that "Bob", an independent contractor that delivers furniture purchased by customers at the Holiday Store, was stealing items from the store. Prior to taking items from the store, Bob, the delivery driver, would remove high-ticket items from the unsold section and place them in the sold section. Bob would also put "sold" tickets on items that he would then steal from the store. Bob operates a furniture store in Holiday, Florida.

17. Plaintiff first informed Tina of Bob's activities but Tina did not take any action towards Bob.

18. Plaintiff then also informed Morris of Bob's activities. However, Morris also did not take any action towards Bob.

19. Plaintiff then became aware of theft by "Tina" the Assistant Manager.

3

20. Specifically, on several occasions, Plaintiff saw Tina place household items and clothing in shopping bags. Instead of proceeding to the cash register, Tina took the items from the store and place them in her vehicle.

21. On or about May 2017, Plaintiff informed Morris, the Manager, of the theft by Tina and that Tina was aware of Bob's activities.

22. However, Morris disregarded Plaintiff and instead began his retaliation against Defendant.

23. Until Plaintiff began to object to Defendant's activities, in violation of State statues, he had a near spotless work record.

24. Plaintiff then became aware that Morris was also stealing from the store.

25. Morris unnecessarily kept various items, such as clothes and electronics, in his office that did not serve a business purpose.

26. Morris would instruct employees to place unsold furniture and other items in the sold section.

27. On several occasions, Plaintiff witnessed Morris removing unpurchased items from the store and placing them in Morris' vehicle.

28. Plaintiff also recognized that Morris, Tina, and Bob were complicit in the theft from the store.

29. Morris, Tina, and Bob were stealing high-ticket items from the store. All three individuals would mark unsold items as sold and have Bob, the delivery driver, remove the items from the store premises.

30. On a daily basis, Plaintiff witnessed Morris marking unsold furniture as sold.

31. Morris would also attach payment tickets to furniture marked as sold to minimize suspicion by other employees.

32. After Plaintiff complained to Morris, Morris began his retaliation against Plaintiff and began to harass Plaintiff daily.

33. Morris and Tina began to more closely scrutinize Plaintiff at work than other employees.

34. Plaintiff was also reprimanded for issues that other employees engaged in without reprimand.

35. Every work-week, Plaintiff would also be called into Morris' office at least twice for trivial matters – such as not engaging with other employees as to foster a collegial environment.

36. Although Plaintiff was harassed on a daily basis, by the Morris and Tina, Plaintiff was expected to maintain a cheerful demeanor. Morris would reprimand Plaintiff for having a negative attitude.

37. Tina called Plaintiff a "backstabber" in front of another employee.

38. Even though Plaintiff was a third-key manager, Morris instructed Plaintiff to undertake menial tasks such as cleaning bathrooms.

39. Tina, the assistant manager, would lie and inform Morris that Plaintiff was not completing his duties.

40. In front of other employees, Morris would disparage the selection of furniture items that Plaintiff would put on the floor by characterizing the selections as "country-ass" (implying that Plaintiff's furniture was unsophisticated and inferior).

5

41. Plaintiff was then suspended without pay for one day by Morris. Morris overheard a customer and the cashier discuss Plaintiff's demeanor. The customer recalled Plaintiff from when he was employed at another store operated by the Defendant. When the cashier characterized Plaintiff as "nice", the customer agreed but added that Plaintiff was "too friendly". Even though it had been months since the Plaintiff last encountered the customer, Morris mischaracterized the conversation between the cashier and customer and suspended Plaintiff.

42. After his suspension, Plaintiff contacted Morris' superior "Kellen" at the Defendant's office in Saint Petersburg. The Plaintiff then met Kellen and Ken Fowler from Human Resources. The Plaintiff was informed that there would be an investigation. Kellen is a "Supervisor" as defined by § 448.101(6), Fla. Stat.

43. The following day, Plaintiff was brought into Morris' office where Morris called Plaintiff "ghetto" and further retaliated against Plaintiff by demoting Plaintiff to "Furniture Associate".

44. Additionally, Morris informed Plaintiff and Tina, that Plaintiff's duties, aside from completing his tasks as a Furniture Associate, would also include sorting new, incoming clothing and removing old clothing from the sales floor.

45. The demotion reduced Plaintiff's job responsibilities involved more menial tasks and reduced Plaintiff's likelihood for promotions and/or pay raises.

46. Plaintiff was given the tasks of two departments that could not be completed during a regular shift.

47. Extra tasks entailing responsibilities of two positions unreasonably interfered with Plaintiff's work performance.

48. Tina began to spread rumors of Plaintiff stealing a television and conspiring with another delivery driver (Otto) to steal store items.

49. After his demotion, Plaintiff's harassment by Defendant became more severe and pervasive and Defendant created an abusive working environment

50. Plaintiff was given a performance review on on June 27, 2017 that deemed Plaintiff's work performance as poor.

51. Kellen came to the Holiday Store and attempted to suspend Plaintiff for his work performance but retracted the suspension when Plaintiff suggested that their conversation would be recorded by Plaintiff to preserve an accurate reflection of their conversation.

## COUNT I

### UNLAWFUL EMPLOYMENT RETALIATION IN VIOLATION OF FLORIDA'S WHISTLEBLOWER STATUES, CHAPTER 448, PART I, FLORIDA STATUES, SECTION 448.102(3) (DEMOTION § 448.101(5))

52. Plaintiff re-alleges paragraphs 1-51 above.

53. During his employment with Defendant, Plaintiff observed and complained of numerous illegal activities which violated state statutes.

54. Specifically, Plaintiff objected to theft by the Manager and Assistant Manager of the Holiday Store.

55. However, Defendant took retaliatory personnel action against Plaintiff for engaging in protected activity by demoting him.

56. Plaintiff also objected to Kellen at the St. Petersburg corporate location and the following day Plaintiff was demoted by Defendant.

57. Defendant's treatment of Plaintiff constitutes a retaliatory personnel action against Plaintiff in violation of § 448.102(3), Fla. Stat. That statue prevents an employer from taking retaliatory action against an employee because the employee has: "Objected to, or refused to participate in an activity, policy, or practice of the employer which is in violation of law, rule or regulation."

58. Defendant intentionally took retaliatory action against Plaintiff because he objected to theft by Morris and Tina.

59. Defendant's illegal retaliation against Plaintiff, in violation of § 448.102, Fla. Stat., was willful, malicious, and taken with reckless indifference to Plaintiff's rights.

60. As a result of Defendant's unlawful, retaliatory conduct, Plaintiff has suffered damages, including (without limitation), emotional damages.

WHEREFORE, Plaintiff asks for judgement:

a. Permanently enjoining Defendant, its officers, agents, servants, employees from engaging in the acts and practices in violation of provisions of Chapter 448, Part I, Florida Statutes (2016), as specifically alleged above, and any similar acts and practices;

b. Reinstatement of Plaintiff to the same, or equivalent position, held before the retaliatory personnel action and all other appropriate relief pursuant to § 448.103(2)(c) and (d).

c. Any other compensatory damages allowable at law, including emotional distress damages pursuant to § 448.103(2)(d);

d. Awarding reasonable attorney's fees and costs pursuant to § 448.104, Florida Statues (2016);

8

e. Granting such other relief as this Court deems just and proper.

## COUNT II

### UNLAWFUL EMPLOYMENT RETALIATION
### IN VIOLATION OF FLORIDA'S WHISTLEBLOWER STATUES,
### CHAPTER 448, PART I, FLORIDA STATUES, SECTION 448.102(3)
### (SUSPENSION § 448.101(5))

61. Plaintiff re-alleges paragraphs 1-60 above.

62. During his employment with Defendant, Plaintiff observed and complained of numerous illegal activities which violated state statutes.

63. Specifically, Plaintiff objected to theft by the Manager and Assistant Manager of the Holiday Store.

64. However, Defendant took retaliatory personnel action against Plaintiff for engaging in protected activity by suspending him.

65. Shortly after Plaintiff's objection to Defendant's illegal activities, practices, or policies, which were in violation of law, rule or regulation, Defendant suspended Plaintiff.

66. Defendant's treatment of Plaintiff constitutes a retaliatory personnel action against Plaintiff in violation of § 448.102(3), Fla. Stat. That statue prevents an employer from taking retaliatory action against an employee because the employee has: "Objected to, or refused to participate in an activity, policy, or practice of the employer which is in violation of law, rule or regulation."

67. Defendant intentionally took retaliatory action against Plaintiff because he objected to theft by Morris and Tina.

68. Defendant's illegal retaliation against Plaintiff, in violation of § 448.102, Fla. Stat., was willful, malicious, and taken with reckless indifference to Plaintiff's rights.

9

69.     As a result of Defendant's unlawful, retaliatory conduct, Plaintiff has suffered monetary damages, including (without limitation), emotional damages.

WHEREFORE, Plaintiff asks for judgement:

a.    Permanently enjoining Defendant, its officers, agents, servants, employees from engaging in the acts and practices in violation of provisions of Chapter 448, Part I, Florida Statutes (2016), as specifically alleged above, and any similar acts and practices;

b.    Reinstatement of Plaintiff to the same, or equivalent position, held before the retaliatory personnel action and all other appropriate relief pursuant to § 448.103(2)(c) and (d).

c.    Any other compensatory damages allowable at law, including emotional distress damages pursuant to § 448.103(2)(d);

d.    Awarding reasonable attorney's fees and costs pursuant to § 448.104, Florida Statues (2016);

e.    Granting such other relief as this Court deems just and proper.

## COUNT III

### UNLAWFUL EMPLOYMENT RETALIATION IN VIOLATION OF FLORIDA'S WHISTLEBLOWER STATUES, CHAPTER 448, PART I, FLORIDA STATUES, SECTION 448.102(3) (HARASSMENT § 448.101(5))

70.    Plaintiff re-alleges paragraphs 1-69 above.

71. During his employment with Defendant, Plaintiff observed and complained of numerous illegal activities which violated state statutes.

72. Specifically, Plaintiff objected to theft by the Manager and Assistant Manager of the Holiday Store.

73. Defendant's retaliatory harassment of Plaintiff for having engaged in protected activities was sufficiently severe and pervasive and created an abusive working environment.

74. Defendant's treatment of Plaintiff constitutes a retaliatory personnel action against Plaintiff in violation of § 448.102(3), Fla. Stat. That statue prevents an employer from taking retaliatory action against an employee because the employee has: "Objected to, or refused to participate in an activity, policy, or practice of the employer which is in violation of law, rule or regulation."

75. Defendant intentionally took retaliatory action against Plaintiff because he objected to theft by Morris and Tina.

76. Defendant's illegal retaliation against Plaintiff, in violation of § 448.102, Fla. Stat., was willful, malicious, and taken with reckless indifference to Plaintiff's rights.

77. As a result of Defendant's unlawful, retaliatory conduct, Plaintiff has suffered damages, including (without limitation), emotional damages.

WHEREFORE, Plaintiff asks for judgement:

a. Permanently enjoining Defendant, its officers, agents, servants, employees from engaging in the acts and practices in violation of provisions of Chapter 448, Part I, Florida Statutes (2016), as specifically alleged above, and any similar acts and practices;

  b. Reinstatement of Plaintiff to the same, or equivalent position, held before the retaliatory personnel action and all other appropriate relief pursuant to § 448.103(2)(c) and (d).

  c. Any other compensatory damages allowable at law, including emotional distress damages pursuant to § 448.103(2)(d);

  d. Awarding reasonable attorney's fees and costs pursuant to § 448.104, Florida Statues (2016);

  e. Granting such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

               Respectfully submitted,

               /s/ Derek P. Usman
               Derek P. Usman
               Florida Bar No. 0120303
               Trial Counsel for Plaintiff Michael King
               Primary Email: derek@usmanfirm.com
               The Usman Law Firm, P.A.
               14517 N 18th Street
               Tampa, FL 33613
               (813) 377-1197
               (312) 528-7684 Fax
               Attorney for Plaintiff